**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Benjamin Harold BROOKS and**
**Frederick James Treesh,**
**Defendants–Appellants.**

Nos. 96–1377, 96–1415.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 14, 1997.

Decided Sept. 9, 1997.

Lynn S. Adelman (argued), Jon Deitrich, Adelman, Adelman & Murray, Milwaukee, WI, for Benjamin Harold Brooks.

Martin H. Kinney (argued), Merrillville, IN, for Frederick J. Treesh.

Before RIPPLE, MANION and EVANS, Circuit Judges.

RIPPLE, Circuit Judge.

After a three-day jury trial, Benjamin Harold Brooks and Frederick James Treesh were convicted of bank robbery in violation of 18 U.S.C. § 2113(a). The district court then sentenced each one to 300 months of imprisonment, consecutive to any other federal or state sentence, and to 5 years of supervised release. On appeal they challenge a number of the district court's denials of pretrial and trial motions as well as several of its evidentiary rulings during trial. Mr. Brooks also claims that the evidence did not support the verdict and that his counsel's assistance was constitutionally ineffective. Upon review of the record and consideration of the arguments of counsel on each issue, we affirm the judgments of conviction.

## I

## BACKGROUND[1]

When Frederick James Treesh and his girlfriend Keisha Harth were at a drug house in Fort Wayne, Indiana, in June 1994, they ran into a high school friend of Harth's, Benjamin Brooks. The reacquaintance led to an alliance of sorts: First the two men moved into the house of Mr. Treesh's mother in Waterloo, Indiana; then, in July, the threesome—Treesh, Brooks and Harth—left Waterloo and traveled around Indiana, to Fort Wayne, Churubusco and Warsaw, before coming to Hammond at the end of July or early August. As they were traveling in Mr. Treesh's red Ford Ranger pickup truck around the outskirts of Hammond one day in early August (according to Harth's testimony), Mr. Brooks and Mr. Treesh talked about

Andrew B. Baker, Jr. (argued), Office of the United States Attorney, Dyer, IN, for Plaintiff–Appellee.

---

1. Viewing the evidence in the light most favorable to the jury's verdict, we present the facts as the jury reasonably could have found them.

getting some money to buy more drugs. Along the highway was the First Federal Savings Bank of Dyer, Indiana. Mr. Treesh pulled into the parking lot; Mr. Brooks, wearing a dark jacket, took a greenish-gray toy grenade out of the glove compartment, put the grenade inside his jacket and walked to the bank. Harth and Mr. Treesh waited in the pickup.

There were two tellers in the First Federal Savings Bank during the noon hour of August 10, 1994, when a man entered the bank. The bank's video surveillance cameras filmed the actions of the "customer" while he was in the bank. Jennifer Samples, a teller, answered the man's questions about opening a bank account; when he asked about commercial accounts, however, Samples referred him to Dorothy Johnson, the senior teller. Samples then went into the back room. The man thanked Johnson for the information, turned to leave, and then announced it was a robbery. He opened his coat, which Johnson described as dark blue, and showed a weapon. Johnson, who had been the victim of two previous robberies in which guns were pointed at her, concluded that it was a pistol, although she was unable to see a handle or a trigger. She did as he demanded; she removed the money from her drawer and from Samples' drawer and put it on the counter. The robber then told Johnson that he left his prints all over the counter. Samples returned from the back room as the man was walking sideways to the door, warning them not to hit the alarm. When he got to the door, Johnson hit the alarm and Samples called the police. Samples identified Mr. Brooks in court as the man in the bank.

Mr. Brooks left the bank and got into Mr. Treesh's waiting truck. Keisha Harth testified that, as Mr. Treesh drove away, Mr. Brooks counted the money while he hid on the floor of the truck under Harth's legs; he reported that he got about $1,000.[2] According to Harth, Mr. Brooks told them that he had been talking to two ladies in the bank about opening an account. Harth also testi-

fied that they bought drugs after the robbery.

The Dyer police and FBI Agent Grist both responded to the bank's call and investigated the robbery. Each teller separately described the robber in similar detail (a 5'6"–8" white male, 30–35 years of age, thin build, short dark hair, dark glasses, blue jeans, blue or navy jacket with a gold seal reading "U.S. Omni"). Johnson added that the man had a dirty complexion and wore gym shoes. Samples also described the robber as having bent ear tips and a circular-shaped tattoo on his right hand between the thumb and index finger. Mr. Brooks is a white male about 5 feet 8 inches tall, about 150 pounds, with dark brown hair and a tattoo on his right hand between his thumb and index finger. However, none of the latent fingerprints taken from the bank counter, door, or brochures matched Mr. Brooks' prints, and no arrests were made in the weeks following the robbery.

Several weeks later, however, Mr. Brooks and Mr. Treesh were arrested in Ohio. They were caught by local police on the evening of August 27, 1994, minutes after they robbed a video store in East Lake, Ohio.[3] The police found Mr. Brooks hiding in the back of the car he had driven away from the crime scene. After holding him at the scene for half an hour or more, the police transported Mr. Brooks to a hospital for treatment of his injured hand. When Mr. Brooks was taken to the local police station, he was held in the squad car for half an hour while witness interviews were being conducted in the station. Once he was brought into the station, he was moved from a holding cell to different interview rooms as the police recorded his booking information.

At around 5:45 a.m., FBI Agent Buck and another special agent came to question Mr. Brooks concerning other incidents, such as the transportation of stolen cars and bank robberies. Agent Buck testified that Mr. Brooks was alert and coherent and that he

---

**2.** An audit of the bank revealed that $1,582 was taken in the robbery.

**3.** A store employee was killed during the video store robbery. Following a jury trial in Ohio, Mr. Treesh was convicted of the murder and was sentenced to death; Mr. Brooks' sentence was 50 years to life in prison.

agreed to talk. Mr. Brooks also signed the *Miranda* waiver form: Agent Buck first read it to him, and then Mr. Brooks read it and stated that he understood the form; at that point he signed it. Mr. Brooks then gave a statement. The interview continued for two hours; when Mr. Brooks asked to end the interview because he was tired, it was terminated.

According to Agent Buck, during the interview, Mr. Brooks told the agent that he had met Harth and another individual in a drug house in Fort Wayne, that they had traveled throughout Indiana in a red pickup truck and that they stopped at a bank in northwest Indiana, in a place called Sharonville or Sharon-something. Mr. Brooks also stated that he got out of the truck, went into the bank, approached a teller and, after engaging in small talk with her, produced a simulated grenade. Mr. Brooks reported to the agent that he told the woman to put the money on the counter; he said he picked up the money, left the bank and got into the vehicle with the other individual and Harth. According to Mr. Brooks, he got $1,200–1,300 in the robbery; they went to Chicago afterwards.

In September FBI Agent Grist showed the bank tellers, Johnson and Samples, a photo spread which included a photograph of Mr. Brooks taken in November 1993, when the suspect had long hair covering his ears and a full moustache. Neither teller made an identification. In November, the agent returned with another photo spread; this one included a later photograph of Mr. Brooks, taken August 1994, with short hair, visible ears and a one-to-two-day stubble. Samples, who had dealt with the robber almost 5 of the 6½ minutes that the robber was in the bank, immediately identified Mr. Brooks as the robber. Johnson, who had been with the robber about 40 seconds, picked a photograph of another subject.

Messrs. Brooks and Treesh were indicted on a single bank robbery count, and each pleaded not guilty. Trial began October 24, 1995; on October 27, the jury found both men guilty as charged. They now appeal.

## II

### DISCUSSION

A. *Mr. Brooks' Claims*

1. Motion to Suppress

a.

Mr. Brooks asserts on appeal, as he did before the district court, that his statement concerning the Dyer robbery should be suppressed because he did not validly waive his *Miranda* rights before speaking to the FBI agents and because he did not speak voluntarily to the agents. At the suppression hearing, Mr. Brooks testified that he had been under the influence of crack cocaine or its aftereffects at that time; in fact, he submits, he "had been smoking a steady supply" of crack cocaine for about two months, and had not slept in the four days prior to robbing the Ohio video store. Tr. at 217–18. Mr. Brooks also testified that, at the time of his arrest, he was forced to lie in the street 30–45 minutes before being taken to a local hospital for treatment of his hand.[4] At the hospital, he was given a local anaesthetic so that his hand could be stitched. At the police station, he was moved back and forth from holding cell to interview room to be booked, finger-printed, photographed and questioned. For this reason, he testified, he was unable to sleep before the FBI agents came at 5:45 a.m., about six hours after his arrest. Because of this lack of sleep and the aftereffects of the crack cocaine he had taken shortly before the video store robbery, after two hours with the agents Mr. Brooks claimed he "was no longer coherent" and asked to stop the interview. Tr. at 221. In fact, he stated, his head did not clear until the next day. Consequently, he contends, neither the waiver of his *Miranda* rights nor his statement to the FBI implicating himself in various crimes can be considered voluntary. In addition, he asserts, his waiver was not knowingly and intelligently made.

4. Mr. Brooks admitted that he shot his right hand with his own shotgun and received thirteen stitches. He also testified that he was detained at the hospital so that one of the robbery victims could identify him.

b.

In its consideration of Mr. Brooks' motion to suppress, the district court compared Mr. Brooks' testimony with that of the FBI agent who interviewed Mr. Brooks. Agent Buck testified that Mr. Brooks had agreed to discuss other crimes with him—transporting stolen cars across state lines and bank robberies. According to Agent Buck, when he read Mr. Brooks his rights from the waiver form, Mr. Brooks also read the form, said he understood, and signed it. Agent Buck observed that Mr. Brooks was wide awake, alert and coherent and that he spoke clearly. He stated that Mr. Brooks never said he wanted to sleep, never nodded off, never complained of great pain, and was given aspirin when he requested it. During the interview, the agent testified, Mr. Brooks attributed his failure to remember some details to the large amount of cocaine he had taken over the past two months. According to Agent Buck, Mr. Brooks told him that he had taken crack cocaine shortly before the Ohio video store robbery but that "it had not been good cocaine, if cocaine, at all." Tr. at 238. For that reason, Mr. Brooks told the agent, they were looking for more cocaine at the time of the robbery. The FBI agent assumed, therefore, that Mr. Brooks had not gotten "high" from the crack cocaine. When Mr. Brooks asked that the interview end, it did.

In its written order denying the motion to suppress, the district court presented specific observations concerning the evidence offered at the suppression hearing. It noted Mr. Brooks' detailed description of the events between his arrest and his interview with the FBI and concluded that Mr. Brooks' alert observances while in custody "belie[d] any claim by Brooks that his mind was so addled by cocaine and lack of sleep that he was not capable of making voluntary and informed choices." R.69 at 8. The court stated that some evidence indicated that the "not-good" cocaine Mr. Brooks took before the robbery may not have affected him at all; in any case, commented the court, Mr. Brooks stated at the hearing that he had been feeling only the aftereffects of the cocaine by the time of the FBI interview. Consequently, because the aftereffects of drug use "have less influence on thinking and volition than a full-blown high," the court doubted the defendant's claim of mental incapacity during the FBI interview. *Id.*

The court commented that nothing in the record suggested that the Ohio police officers had reason to know that Mr. Brooks was sleep-deprived or on cocaine, and nothing even hinted that the booking procedures were coercive or were intended to deprive Mr. Brooks of his sleep. It found that Agent Buck's testimony and written report credibly indicated that he did not suspect that the defendant was sleep-deprived or high on cocaine before Mr. Brooks asked to stop the interview. The court further found Mr. Brooks' selective memory uncorroborated and not credible. It noted that the FBI interview of Mr. Brooks was, "while perhaps probing, ultimately evenhanded and not coercive." *Id.* at 9. The district court then offered a summation of its findings:

> In sum, the Court finds as follows: that Brooks was lucid, alert, and capable of making informed and voluntary choices when he signed the waiver form and gave his F.B.I. statement; that even if Brooks was in the contrary condition he claims, the agents had no reason to know it because Brooks' behavior did not reveal the condition; and that even if Brooks was in the condition he claims and the agents knew it, the agents did not use techniques that capitalized on the condition.

*Id.* at 10. The court concluded "that Brooks knowingly and voluntarily waived his *Miranda* rights before talking with the FBI and also that Brooks voluntarily made the statement to the FBI agents." *Id.* at 11. It then denied the motion to suppress.

c.

We are asked to review the voluntariness of Mr. Brooks' waiver of his *Miranda* rights and of his statement to the FBI agent. In *United States v. Mills,* 122 F.3d 346 (7th Cir.1997), we recently held that "the ultimate issue of the voluntariness of a waiver of *Miranda* rights ought to be reviewed de novo by an appellate court." 122 F.3d at 347. Following the analytical methodology set

forth in *Ornelas v. United States,* —— U.S. ——, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), we distinguished our independent review of the legal questions from our deferential approach to a district court's assessment of the historical facts of a case: "[W]e emphasize that the findings of historical fact and the reasonable inferences that the trier of fact draws from those findings are matters on which we owe deference." *Id.* In *United States v. D.F.,* 115 F.3d 413 (7th Cir.1997), which employed the *Ornelas* paradigm to establish the standard for reviewing the voluntariness of a confession, this court held that the voluntariness of a defendant's statement requires a de novo review of the ultimate issue of voluntariness but a deferential review of the trial court's findings with respect to the historical facts on which the voluntariness claim was based. *Id.* at 419.

We now apply that two-pronged standard to review the district court's denial of Mr. Brooks' motion to suppress.

#### d.

█ Mr. Brooks asserts that, because he was experiencing the effects of crack cocaine, sleep deprivation, and a hand injury at the time the FBI agent asked him to waive his *Miranda* rights, he did not possess the mental capacity to execute a voluntary, knowing and intelligent waiver. The district court's findings of fact foreclose Mr. Brooks' claims. As we set forth comprehensively above, the district court found that, during the FBI interview, Mr. Brooks was alert and coherent; he never complained of great pain and was given an aspirin when he requested it. The court also noted that Mr. Brooks gave no indication that he was seriously sleep-deprived or on cocaine at the time. In fact, the court was doubtful that Mr. Brooks was even "on a high" at all, in light of the fact that he had testified that the cocaine was either "not good" or "not real," and that he was feeling only the "after effects" of whatever he had taken more than six hours earlier. R.69 at 8. In its assessment of the suppression hearing testimony, the court found Mr. Brooks' testimony "ultimately unconvincing and not credible," *id.* at 9, and concluded that the defendant was "capable of making informed and voluntary choices when he signed the waiver form," *id.* at 10. The court also expressly found the testimony of FBI Agent Buck credible.

As the Supreme Court has directed us in *Ornelas,* we are careful "to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." —— U.S. at ——, 116 S.Ct. at 1663. This determination is essentially one of fact: whether, under the totality of the circumstances, the defendant was too sleepy, too high on crack cocaine, and in too much pain to be mentally capable of executing a knowing and intelligent waiver of his *Miranda* rights. The district court had no hesitation in finding Mr. Brooks' claims to be incredible and the FBI agent's assessment of the circumstances credible. We give due weight to the trial court's finding that the FBI officer was credible and that the inferences he drew were reasonable, *Ornelas,* —— U.S. at ——, 116 S.Ct. at 1663, and we defer to the court's thorough and specific findings of fact, which were based to a great extent on the judge's observation of the witnesses' demeanor as each one described the circumstances of the FBI interview.[5] *See Mills,* 122 F.3d at 347. Moreover, our examination of the record fully supports the district court's determination. Consequently, we conclude that the district court did not clearly err in finding that Mr. Brooks' waiver of his *Miranda* rights was not hindered by cocaine, pain or lack of sleep.[6] In addition,

---

5. *Cf. Henderson v. DeTella,* 97 F.3d 942, 946 (7th Cir.1996) (In habeas context, "[w]hether a petitioner actually waived his *Miranda* rights, and whether he did so freely, knowingly, and intelligently, are fact-dependent issues . . . ."), *cert. denied,* —— U.S. ——, 117 S.Ct. 1471, 137 L.Ed.2d 683 (1997).

6. *Cf. United States v. Barbour,* 70 F.3d 580, 585 (11th Cir.1995) (acknowledging that a defendant's impaired mental state may prevent his understanding of waiver of *Miranda* rights, but finding it was not so in this case), *cert. denied,* —— U.S. ——, 116 S.Ct. 1445, 134 L.Ed.2d 565 (1996); *United States v. Makes Room,* 49 F.3d 410, 415 (8th Cir.1995) (declining, as it had in earlier cases, to adopt per se rule of involuntariness when confronted with a defendant who is intoxicated or fatigued); *United States v.*

our de novo review of the entire record has brought us to the inevitable conclusion that Mr. Brooks executed a voluntary waiver of his *Miranda* rights.

e.

◼ Mr. Brooks also claims that the statement he made to the FBI agents, after waiving his *Miranda* rights, was not voluntary because of his recent use of crack cocaine and lack of sleep. According to Mr. Brooks, the FBI agent knew that he had ingested cocaine, was having trouble remembering events, and had suffered a serious injury to his hand; yet the agent pressed forward with his interrogation, six hours after his arrest and after questioning by the local officials. These circumstances indicate that Mr. Brooks' will was easily overborne, he submits, and that his confession was not voluntary.

◼ As we stated in *United States v. D.F.*, 115 F.3d 413 (7th Cir.1997), "whether a confession is voluntary is a matter of law that must be reviewed de novo in this court," but "the determination of the historical facts of the case are the proper domain of the trial court and ... our review of its findings in that regard will be for clear error." *Id.* at 419. Traditionally we have assessed the voluntariness of a statement by considering whether, in light of the totality of the circumstances, the statement was the product of a rational intellect and free will, *see Mincey v. Arizona*, 437 U.S. 385, 398, 98 S.Ct. 2408,

2416, 57 L.Ed.2d 290 (1978), or whether it was obtained by the authorities through coercive means, *see Colorado v. Connelly*, 479 U.S. 157, 165, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986).[7] "The issue of coercion is determined from the perspective of a reasonable person in the position of the suspect." *United States v. Fazio*, 914 F.2d 950, 955 (7th Cir.1990). In making that determination, we consider such personal factors as the defendant's age, education, intelligence level and mental state; we also take into account the length of his detention, the nature of his interrogations, the inclusion of advice about constitutional rights, and the use of physical punishment, including deprivation of food or sleep.[8] Such influences as narcotics, alcohol and fatigue also may be factors to be considered in a particular case. However, the test for voluntariness of the statement is whether the claimed impairments caused the defendant's will to be overborne.

In the case before us, the district court believed the assessment of the FBI officer that the defendant gave no indication of being impaired and, correspondingly, disbelieved the defendant's testimony that he was high on cocaine. We defer to the district court's credibility determinations and finding that there was no credible evidence that the defendant lacked the capacity to make a voluntary statement. *See United States v. Montgomery*, 14 F.3d 1189, 1195 (7th Cir. 1994). We find no error in the trial court's findings of fact.[9]

---

*George*, 987 F.2d 1428, 1430 (9th Cir.1993) ("[A] defendant can voluntarily waive his *Miranda* rights even when he is in the hospital, on medication, and in pain."); *United States v. Smith*, 608 F.2d 1011, 1012 (4th Cir.1979) ("The test of whether a person is too affected by alcohol or other drugs voluntarily and intelligently to waive his rights is one of coherence, of an understanding of what is happening.").

**7.** *See also United States v. Cichon*, 48 F.3d 269, 276 (7th Cir.1995), *cert. denied*, — U.S. —, 116 S.Ct. 908, 133 L.Ed.2d 840 (1996); *United States v. Sablotny*, 21 F.3d 747, 750 (7th Cir. 1994); *United States v. Montgomery*, 14 F.3d 1189, 1194 (7th Cir.1994).

**8.** *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); *Sprosty v. Buchler*, 79 F.3d 635, 646 (7th Cir.), *cert. denied*, — U.S. —, 117 S.Ct. 150, 136

L.Ed.2d 95 (1996); *Sablotny*, 21 F.3d at 752; *Montgomery*, 14 F.3d at 1194.

**9.** *See United States v. Reddrick*, 90 F.3d 1276, 1283 (7th Cir.1996) (per curiam) (upholding district court's rejection of defendant's claim that his statement was coerced because he was high on cocaine and marijuana during the interview; affirming obstruction of justice enhancement based on court's disbelief of defendant's suppression hearing testimony); *United States v. Harris*, 44 F.3d 1206, 1210 (3d Cir.) (affirming district court's rejection of defendant's argument that the effects of alcohol had not dissipated when he confessed), *cert. denied*, 514 U.S. 1088, 115 S.Ct. 1806, 131 L.Ed.2d 731 (1995); *United States v. Casal*, 915 F.2d 1225, 1229 (8th Cir.1990) (concluding there was no clear error in district court's finding that, although defendant had recently used methamphetamine and had not slept for five days, and the police were aware of his

Of course, Mr. Brooks must also demonstrate that his statement was involuntary because of official coercion. *See Connelly,* 479 U.S. at 167, 107 S.Ct. at 521. Mr. Brooks suggests certain coercive tactics by the local police—forcing him to lie on the street before taking him to the hospital, moving him from room to room for the various booking procedures—but the district court found that the officers were putting him through "ostensibly legitimate paces" and that such techniques were not coercive. R.69 at 8–9. The court also found that the FBI agent's questioning of Mr. Brooks was "evenhanded and not coercive." *Id.* at 9. We note, as well, that the district court found that the FBI agent had no reason to suspect that Mr. Brooks was suffering from sleep deprivation, an excess of pain or the influence of drugs.[10] Our independent review of the record confirms the district court's conclusion on the ultimate legal issue that Mr. Brooks was capable of making an informed, uncoerced and voluntary statement. Consequently, we affirm the district court's denial of Mr. Brooks' motion to suppress his statement.

## 2. Sufficiency of the Evidence

■ Mr. Brooks was convicted on one count of bank robbery in violation of 18 U.S.C. § 2113(a).[11] He submits that the evidence against him was sparse, unconvincing and insufficient to allow a reasonable jury to find guilt beyond a reasonable doubt. He notes first that the government failed to produce any physical evidence linking him to the bank robbery: No fingerprints matching Mr. Brooks' prints were found at the bank. However, when we review the evidence in the light most favorable to the government, as we must when reviewing sufficiency challenges, *see Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979), we see that the evidence of Mr. Brooks' guilt is far from speculative. The bank teller Jennifer Samples positively identified Mr. Brooks as the robber, both in a photo array and in court. She also identified a photograph of the tattoo on his hand as the tattoo of the robber. In addition, the descriptions of the robber given by the two tellers were quite similar. The jury, after hearing the testimony and the cross-examination of that testimony, believed the teller's eyewitness identification. It was within the purview of the jury to make that determination, and the record supports the conclusion.[12]

Nevertheless, Mr. Brooks challenges the reliability of the eyewitness identification of him. He points out that neither teller identified him in the first photo spread, and that Samples alone identified his photograph in the second array. In our view, it was understandable that neither woman could identify the long-haired mustached Mr. Brooks seen in the old photograph in the first photospread. When Samples saw the more recent

condition, coherent confession was not involuntary), *cert. denied,* 499 U.S. 941, 111 S.Ct. 1400, 113 L.Ed.2d 455 (1991); *Almon v. Jernigan,* 715 F.2d 1505, 1507 (11th Cir.1983) (per curiam) (upholding confession as voluntary when defendant appeared sober and alert, responded "a little bit" when asked if he was in pain, and talked willingly about the crime), *cert. denied,* 466 U.S. 906, 104 S.Ct. 1684, 80 L.Ed.2d 158 (1984).

**10.** *See Sablotny,* 21 F.3d at 752 (requiring special care to be exercised whenever "mental impairment of whatever kind should have reasonably been apparent to the interrogators"); *United States v. Haddon,* 927 F.2d 942, 946 (7th Cir. 1991) (stating that "when the interrogating officers reasonably should have known that a suspect is under the influence of drugs or alcohol, a lesser quantum of coercion may be sufficient to call into question the voluntariness of the confession").

**11.** The bank robbery statute, in pertinent part, provides:

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association;

...; Shall be fined under this title or imprisoned not more than twenty years, or both. 18 U.S.C. § 2113(a).

**12.** *Cf. United States v. Moore,* 115 F.3d 1348, 1363–64 (7th Cir.1997) (concluding that photographic and in-court identification of defendant by credit union employee, including notice of his gold capped tooth, was sufficient evidence despite lack of physical evidence that defendant committed robbery).

photo in the second spread, however, she immediately identified him in that photo array and at trial. Samples, who had the opportunity to observe the robber for about five minutes in the bank, was more likely to make an accurate identification of the robber than Johnson, who viewed the robber for less than a minute.[13] In any case, Mr. Brooks did not challenge any aspect of the identification procedures, and we find nothing unreliable in those procedures. *See United States v. Moore*, 115 F.3d 1348, 1360 (7th Cir.1997) (discussing factors in assessing reliability of identification testimony arising from photo array); *United States v. Zolicoffer*, 92 F.3d 512, 515–16 (7th Cir.1996) (same).

■ Mr. Brooks next points to the discrepancy between teller Johnson's testimony that the robber displayed a blue steel pistol and the references by Mr. Brooks and Harth to a "greenish-gray" hand grenade. Mr. Brooks claims that the possibility of mistaking a blue pistol for a green hand grenade is remote. However, a teller who has been the victim of two prior robberies by gunpoint and who is shown a weapon as it is taken out of the robber's jacket pocket reasonably could assume that the weapon was a gun. Teller Johnson testified that she saw something dark blue and long that she identified as a gun; but she also testified that the robber's hand was over it and she could not see the handle, muzzle or trigger. The sorting out of uncertain or conflicting testimony is clearly within the domain of the jury. *See United States v. Patterson*, 23 F.3d 1239, 1244 (7th Cir.) ("The jury is the final arbiter of questions pertaining to which witnesses to believe, and which part of those witnesses' testimony to believe."), *cert. denied*, 513 U.S. 1007, 115 S.Ct. 527, 130 L.Ed.2d 431 (1994). A jury reasonably could infer from that evidence that the teller actually had seen a toy hand grenade or that Mr. Brooks had a gun in his pocket as well as a grenade.[14]

We likewise must declare meritless Mr. Brooks' assertion that his cocaine-and-fatigue-induced statement to the FBI agent was vague and unreliable. We concluded earlier that Mr. Brooks' statement was voluntary and was properly admitted at trial; we note as well that the details of his statement are quite consistent with other testimony concerning the First Federal Savings Bank robbery.

It was the jury's prerogative to determine the weight that ought to be given to the evidence. The jury heard the evidence and observed the witnesses through direct and cross-examination; it had the responsibility of assessing their credibility. *See Moore*, 115 F.3d at 1363–64. "[Q]uestions of credibility are solely for the trier of fact, [so] such arguments are wasted on an appellate court." *United States v. Henderson*, 58 F.3d 1145, 1148 (7th Cir.1995) (citations and internal quotations omitted). A jury reasonably could have found from the evidence at trial that Mr. Brooks was the man who robbed the First Federal Savings Bank in Dyer, Indiana on August 10, 1994.

■ Mr. Brooks' final contention is that Keisha Harth's testimony was incredible as a matter of law. The defendant submits that, because Harth's testimony was given under a grant of immunity, she had a clear motivation to lie, and she did lie by placing Mr. Brooks at the scene of the crime. According to Mr. Brooks, Harth's memory "magically improved" when she was granted immunity; she added details at trial that were not found in her initial statements to the FBI.

This assertion by Mr. Brooks is without any support. When Harth took the stand, the jury was informed immediately of Harth's status as a government witness, a convicted felon testifying under a grant of immunity. It was within the jury's province to weigh her testimony in light of those

---

13. We have supported convictions based on identifications made after periods of less than five minutes of observation. *See United States v. Miller*, 984 F.2d 201, 202 (7th Cir.1993) (discussing time factor in identification evidence); *United States v. Johnson*, 859 F.2d 1289, 1296 (7th Cir. 1988) (upholding identification of bank robber based on two-minute transaction as sufficient).

14. In any case, Mr. Brooks was convicted of § 2113(a), which requires proof of robbery "by force and violence, or by intimidation," and not of § 2113(d), which specifies "the use of a dangerous weapon or device."

circumstances. Harth's fuller description of the robbery in no way contradicted the statements she gave to the FBI. Moreover, Mr. Brooks offers no showing that Harth's immunized testimony was incredible as a matter of law. For evidence to be legally incredible, it must have been based on an event that was "physically impossible for the witness to observe ... or impossible under the laws of nature for the occurrence to have taken place at all." *Henderson*, 58 F.3d at 1149; *see United States v. Clark*, 989 F.2d 1490, 1501 (7th Cir.1993). Mr. Brooks does not make the claim that Harth's testimony "was unbelievable on its face." *United States v. Alcantar*, 83 F.3d 185, 188–89 (7th Cir.1996). He claims only that she had a strong incentive to fabricate evidence in her own self-interest. Such an argument is not evidence that her testimony was incredible as a matter of law. "Many witnesses have motivations for testifying that are less than pristine; herein lies the purpose of cross-examination." *Clark*, 989 F.2d at 1501. Counsel for the defendants took full advantage of the opportunity to cross-examine Harth on her motivations for testifying under a grant of immunity; that evidence was before the jury. "Testimony is not incredible ... only because the witness may have been impeached by certain discrepancies in his story, by prior inconsistent statements, or by the existence of a motive to provide evidence favorable to the government." *Id.* The jury is the final arbiter of those questions.

We shall reverse a conviction only if no rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the offense charged on the evidence presented. *See Alcantar*, 83 F.3d at 189. We shall not reweigh that evidence or judge the credibility of the witnesses. We hold that there was sufficient probative evidence supporting the jury's verdict convicting Mr. Brooks.

When the evidence in this case is viewed in the light most favorable to the government, it is clearly sufficient to sustain Mr. Brooks' conviction. The evidence shows that the First Federal Savings Bank in Dyer, Indiana was robbed on August 10, 1994, shortly after noon. Teller Samples positively identified Mr. Brooks as that man. In addition, Mr. Brooks admitted robbing a bank in that area around noon, and he admitted being in the company of Keisha Harth when he robbed the bank. Harth's testimony corroborates Mr. Brooks' statement and is consistent with the testimony of the two tellers, because she testified that Mr. Brooks told her what transpired during the robbery, including the fact that he had talked to two women in the bank about opening an account before announcing the robbery. Thus the record contains ample evidence to support the jury's verdict.

### 3. Ineffective Assistance of Counsel

Mr. Brooks raises a final claim on his own behalf. He asserts that his lawyer rendered constitutionally ineffective counsel at trial by failing to recall Keisha Harth to the stand in order to attack certain prior inconsistent statements and by failing to object to an improper jury instruction. Typically claims of ineffective assistance of counsel are not reviewed in a direct criminal appeal. *United States v. Garrett*, 90 F.3d 210, 214 (7th Cir.1996); *United States v. Walls*, 80 F.3d 238, 243 (7th Cir.1996). As we have recently explained,

> This Court's reluctance to consider ineffective assistance claims on direct appeal stems, of course, from the fact that such claims are very unlikely to find any factual support in the trial record and an adverse determination on direct appeal will be res judicata in any subsequent collateral attack. As we have so often put it, "a defendant who presents an ineffective-assistance claim for the first time on direct appeal has little to gain and everything to lose."

*United States v. Cooke*, 110 F.3d 1288, 1299 (7th Cir.1997) (quoting *United States v. Allender*, 62 F.3d 909, 913 (7th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 781, 133 L.Ed.2d 732 (1996)) (other internal citations omitted). Consequently, if "the issues raised require an assessment beyond the scope of the present record," we decline to entertain an ineffective assistance claim on direct appeal. *Garrett*, 90 F.3d at 214 (concluding that the problem is not ripe for appellate adjudication); *see United States v. Jackson*, 33 F.3d 866, 875 (7th Cir.1994), *cert. denied*,

514 U.S. 1005, 115 S.Ct. 1316, 131 L.Ed.2d 197 (1995) (same). However, if the record is sufficiently developed to consider the claim adequately, we shall not forbid an appellant from raising the issue. *See Guinan v. United States,* 6 F.3d 468, 472–73 (7th Cir.1993) ("If the argument is made and rejected, ... the appellant must live with the consequences."), *quoted in Allender,* 62 F.3d at 913. In this case, the record is sufficiently developed and the claim sufficiently clear-cut to consider Mr. Brooks' contentions. We therefore review the defendant's two claims of ineffective performance under the two-pronged test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that his counsel's performance was constitutionally ineffective, the defendant must establish both that trial counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the outcome of the proceedings. *Id.* at 688, 691–92, 104 S.Ct. at 2064, 2066–67 .

◼ First, Mr. Brooks submits that his lawyer failed to cross-examine Keisha Harth concerning prior inconsistent statements. Mr. Brooks claims that a statement taken from Harth on November 11, 1994, contained statements inconsistent with her trial testimony. When Mr. Brooks provided that November 11 statement to his attorney, however, the lawyer refused to recall Harth to the stand to cross-examine her based on those statements. Our examination of the record indicates that Mr. Brooks' attorney explained on the record that he had chosen not to call Harth back to the witness stand; in his view, the possible damage far outweighed the advantages. This example of a tactical decision on the part of counsel reflects the reasonable professional judgment that cannot be considered ineffective assistance. "The *Strickland* test is 'highly deferential' to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Williams,* 106 F.3d 1362, 1367 (7th Cir.1997). We hold that Mr. Brooks' attorney did not render ineffective assistance on this matter.

◼ Mr. Brooks also submits that trial counsel failed to object to an improper jury instruction concerning other acts evidence. The instruction as originally proposed by the trial court stated:

You have heard evidence of acts of the Defendants other than those charged in the indictment. You may consider this evidence only on the question of motive and intent. This evidence is to be considered by you only for this limited purpose.

When the defendants objected to the instruction, the court agreed to amend it by inserting the phrase "(use of cocaine)" with the word "acts" so that the jury would not speculate as to what "other acts" the instruction contemplated, and by striking the word "intent." The revised instruction read:

You have heard evidence of acts (**use of cocaine**) of the Defendants other than those charged in the indictment. You may consider this evidence only on the question of motive. This evidence is to be considered by you only for this limited purpose.

But the court did not read in the changes, and trial counsel failed to object. Mr. Brooks claims this failure to object prejudiced him because it left the jury to speculate as to what "other acts" there were. Our review of the record does not support this claim. Even if we assume that the lawyer's performance was ineffective, there is no evidence that counsel's ineffective assistance in failing to object to the jury instruction was prejudicial. The record reflects that the only "other acts" in evidence were the use of drugs by the defendants; there was no indication that Mr. Brooks was involved in the crimes for which Harth was in prison, and in any case the jury was instructed to consider her convictions only in assessing her credibility. Mr. Brooks fails to show that this minor misreading of the jury instruction, to which no objection was raised, prejudiced the outcome of the proceedings. We conclude that Mr. Brooks fails to meet his burden of proving that his counsel's conduct meets the *Strickland* test for ineffective assistance claims.

B. *Joint Claims Brought by Mr. Brooks and Mr. Treesh*

   1.  Motion to Dismiss the Indictment

         a.

On July 21, 1995, the grand jury indicted Mr. Brooks and Mr. Treesh for bank rob-

bery. The single witness to testify before the grand jury was FBI Special Agent Arthur Grist, Jr. He testified that the FBI connected the defendants to the robbery of the First Federal Savings Bank in Dyer, Indiana on August 10, 1994, because of the statement Mr. Brooks made to the FBI after the Ohio video store robbery. The defendants moved to dismiss the indictment on the ground that Agent Grist (and the Assistant United States Attorney who was questioning him before the grand jury) presented false testimony to the grand jury. The defendants focus on the agent's testimony that Mr. Brooks had admitted to committing a robbery in the Schererville/Dyer area by use of a handgun. They claim the agent's statement was false with respect to the location of the robbery and the type of weapon used.

According to the defendants, there are two mistakes concerning the robbery location. First, the FBI agent's notes, taken as Mr. Brooks was making his statement, indicate that Mr. Brooks admitted robbing a bank in "Sharonville or Sharon-something," not Schererville. Second, the FBI's written report of Mr. Brooks' statement states that he robbed a bank at a town in the extreme *northeast* corner of Indiana; however, Agent Grist's handwritten notes indicate that Mr. Brooks stated that it was the "extreme *northwest* corner" of Indiana. The type of weapon identified is also false information, the defendants assert. They contend that Agent Grist falsely told the grand jury that Mr. Brooks had stated he had either a handgun or toy hand grenade during the robbery. However, Mr. Brooks' statement contained no mention of a handgun; he stated that he used a hand grenade. Such false statements by the government's only witness clearly prejudiced Mr. Brooks, for the actual evidence produced by the government, Mr. Brooks' statement, indicated only that he used a toy hand grenade in a robbery and that the bank was in "Sharonville or Sharon-something," not Dyer, Indiana.

The district court denied the defendants' motion to dismiss the indictment. It believed the discrepancy in the bank's location was not deliberately false perjury; rather, the misstatement was an "isolated departure from a verbatim account of Brooks's statement," an "innocent, inadvertent, and isolated short-cut in testimony" that "amounted to negligently misspeaking at most." R.71 at 6–7. It also concluded that Agent Grist, "at most, negligently misspoke" about the weapon. *Id.* at 8. In any case, the court found, the defendants were not prejudiced by any inaccuracy in Agent Grist's testimony, because other evidence given by him and not challenged by the defendants independently supported the indictment: the bank teller's photo identification of Mr. Brooks as the robber; the agent's notes that Mr. Brooks admitted robbing a bank in Indiana; and the fact that the testimony of both defendants presented consistent "stories." *Id.* at 9. According to the court, Agent Grist accurately presented that evidence, and that evidence, on its own, would have allowed the grand jury to find probable cause to indict both defendants for the bank robbery that occurred in Dyer, Indiana on August 10, 1994.

### b.

██ The defendants now submit the same claims they raised in the district court. They assert that the false testimony of Agent Grist, the only witness to testify before the grand jury, clearly prejudiced them. His false statements placed Mr. Brooks at the scene of a robbery in Dyer, which is in northwest Indiana, with the crime weapon, a gun (as the bank teller testified) in his hand. However, Mr. Brooks had said a "northeast" town and had mentioned only a hand grenade, not a handgun.

The Supreme Court has held, in *Bank of Nova Scotia v. United States,* 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988), that "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.* at 256, 108 S.Ct. at 2374 (quoting *United States v. Mechanik,* 475 U.S. 66, 78, 106 S.Ct. 938, 945, 89 L.Ed.2d 50 (1986)). "[A] district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Id.* at

254, 108 S.Ct. at 2373. Based on these principles established by the Supreme Court, we have established that "prejudice" occurs when the alleged violation had a substantial effect on the grand jury's decision to indict or when it was quite doubtful that the decision to indict was free from that violation's considerable influence. *See United States v. Anderson,* 61 F.3d 1290, 1296 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 543, 133 L.Ed.2d 446 (1995).

It is clear from the district court's analysis of the defendants' claims that the district court quite properly refused to dismiss the indictment. First, the defendants failed to prove that the claimed perjurious remarks substantially influenced the grand jury's decision to indict them. Agent Grist testified that Mr. Brooks had stated "that he either had a handgun or a hand grenade during the robbery." That statement is partially consistent with Mr. Brooks' claim that he used a fake grenade as a weapon in the robbery. Likewise, the confusion concerning the location of the robbery in northeast or northwest Indiana is certainly not perjurious. We believe that the remarks would not have had a substantial influence on the grand jury's decision to indict Mr. Brooks and Mr. Treesh.

Second, it is clear that the claimed misstatements were, in the end, not prejudicial to the defendants. The district court noted that Mr. Brooks had admitted robbing a bank in Indiana, in a town called "Sharonville or Sharon-something," and that Mr. Treesh told the FBI that he believed the bank was in a small town near the Indiana/Illinois border.[15] Moreover, other testimony (such as the teller's photographic identification of Brooks as the robber) provided sufficient evidence to warrant the return of the indictment. The district court's refusal to dismiss the indictment was proper.

## 2. Motion for Mistrial

Keisha Harth was a key witness for the government. She testified, with immunity, that she had accompanied Mr. Brooks and Mr. Treesh when the Dyer bank was robbed. She described the robbery from her perspective (she did not go into the bank with Mr. Brooks, but was able to report Mr. Brooks' post-robbery statements to her and to Mr. Treesh) and testified that they used the bank money to buy cocaine.

After Harth's testimony, at the end of the third day of trial, the defendants moved for a mistrial on the grounds that Harth appeared in a prison jump suit and that she testified about two other convictions. The district court noted that Harth testified only about her own convictions, not about the defendants'. It also commented that the jury could find, from her testimony, that Harth had committed the crimes for which she was convicted before she became associated with Mr. Treesh. The court acknowledged that defense counsel gave no authority for its cursory arguments and denied the motion.

On appeal the defendants expand somewhat on their claim that they were prejudiced by Harth's appearance as a witness. They first point to Harth's testimony that she was currently in prison because she had been convicted of two crimes, aiding and abetting aggravated robbery and larceny (one of which occurred in 1994). She also testified that she had spent time with the defendants prior to the bank robbery which took place in August 1994. The defendants claim that the jury clearly could have inferred that they might have been guilty of the same crimes for which she was convicted. Thus, they contend, her testimony concerning her prior convictions prejudiced them.

Second, the defendants submit that they were prejudiced by Harth's appearance in a prison jump suit when she testified. They note that the rule that a defendant's right to appear before the jury without shackles now extends to defense witnesses, *see Harrell v.*

---

**15.** The bank is located in Dyer, which is in the northwest corner of Indiana, near the Illinois border. It is bordered by Munster, Highland and Schererville, Indiana. The district court stated:

> Those familiar with the geography of the area covered by the Hammond Division of this district could easily conclude that the "Sharon-something" Brooks recalled was Schererville. Furthermore, no one can seriously dispute that Schererville and Dyer are located in what would commonly be called the northwest corner of Indiana.
> R.71 at 6–7.

*Israel,* 672 F.2d 632, 635 (7th Cir.1982), except of course in extreme cases in which shackles are necessary. In the same way, the defendants assert, a defendant's right to appear in court in non-prison attire, *see Estelle v. Williams,* 425 U.S. 501, 512, 96 S.Ct. 1691, 1696, 48 L.Ed.2d 126 (1976), should likewise extend to witnesses. Because her appearance in prison garb and her testimony concerning other convictions prejudiced their case, they argue that the motion for mistrial should have been granted.

The government submits that the district court properly rejected the defendants' motion for mistrial. It asserts that it is a time-honored trial tactic to elicit from a government witness her felony convictions during her testimony. In this case, Harth's statements about her own convictions had no reference to the defendants. The fact that one conviction occurred sometime in 1994, when she knew Mr. Brooks and Mr. Treesh, does not lead to the conclusion, or even the assumption, that either defendant was involved in that 1994 crime for which she was convicted. In addition, points out the government, the jury knew they all used drugs; beyond the use of drugs, however, there was no evidence in the record that the defendants were involved in any other crimes, including hers. Furthermore, the government asserts, the defendants were not prejudiced by Harth's appearance in prison garb. Even though a defendant has the right for his own witness to appear without physical restraints, the government reminds us that Harth was the government's witness.

We review the district court's disposition of a motion for mistrial under the abuse of discretion standard. *United States v. Kizeart,* 102 F.3d 320, 326 (7th Cir.1996); *United States v. Jones,* 54 F.3d 1285, 1293 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 263, 133 L.Ed.2d 186 (1995); *United States v. Harris,* 2 F.3d 1452, 1456 (7th Cir.), *cert. denied,* 510 U.S. 982, 114 S.Ct. 481, 126 L.Ed.2d 432 (1993). As soon as she took the stand, Harth testified that she was convicted of two crimes and currently was in prison. The jury's immediate awareness of the fact that she was an inmate dispelled the possible prejudice that the prison attire might have created. *See Woods v. Thieret,* 5 F.3d 244, 249–50 (7th Cir.1993); *United States v. Adams,* 1 F.3d 1566, 1584 (11th Cir.1993) ("The inference to be drawn from prison clothing is that the witnesses were in prison, a fact that is not inadmissible."), *cert. denied,* 510 U.S. 1198, 114 S.Ct. 1310, 127 L.Ed.2d 660 (1994). Harth was not asked to relate her convictions to the defendants in any way, and she did not do so. We conclude that the district court did not abuse its discretion by denying the motion for mistrial on those bases.

### 3. Improper Admission of Drug Use Evidence

The district court admitted evidence that the defendants used crack cocaine and that their desire to obtain more cocaine motivated this bank robbery. The court found that the evidence was relevant; it then analyzed the use of that evidence under Federal Rule of Evidence 404(b) and admitted it. The defendants assert that the district court's admission of such evidence was improper.

We review the district court's decision to admit this evidence under Rule 404(b) for an abuse of discretion. *United States v. Moore,* 115 F.3d 1348, 1354 (7th Cir.1997); *United States v. Lloyd,* 71 F.3d 1256, 1264 (7th Cir.1995), *cert. denied,* 116 S.Ct. 2511 (1996). The rule provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove a character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed.R.Evid. 404(b). Our court utilizes a four-step test for determining the admissibility of evidence under Rule 404(b). It requires the trial court to determine whether (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter at issue; (3) the evidence is sufficient to

support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*Lloyd,* 71 F.3d at 1264. According to the defendants, steps two and four were not satisfied in this case: First, the evidence (drug use) was in no way similar to the charged act (bank robbery), and second, the probative value was far outweighed by the prejudicial effect. Mr. Brooks asserts that, because motive is not an element of the crime of bank robbery, the probative value of establishing the defendants' motive for robbing the bank is minimal and is far outweighed by the unfair prejudice that resulted when the jury was informed that defendants robbed banks to support their drug habit. Evidence of their drug use should not have reached the jury, insists the defendants.

■ We believe that the drug use evidence in question met the challenged prongs of the Rule 404(b) test. We note at the outset that the evidence was not offered to establish the defendants' propensity to commit a narcotics offense; instead, it was offered to show the defendants' motive for the bank robbery.[16] The second test is met: Because buying more cocaine was part of the plan at the time the defendants committed the bank robbery, the two acts are close enough in time to reflect temporal proximity. *See Lloyd,* 71 F.3d at 1264 (noting that the second element requires that the act be close enough in time to the crime charged to be relevant to the matter at issue). Even though the drug use and the crime at issue admittedly are not similar, they have a significant relationship because the act is the motive underlying the crime of bank robbery.

*See id.* at 1265 (citing *United States v. Elizondo,* 920 F.2d 1308, 1320 (7th Cir.1990)).

■ When we consider the fourth step, whether the probative value of the drug use evidence was outweighed by the danger of undue prejudice to the defendants, we note first that the evidence of drug use was clearly relevant and probative, because it explains why the defendants were robbing a bank at that time. We acknowledge that it was also detrimental to the defendants for the jury to view them as drug addicts. However, the issue is whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *United States v. Koen,* 982 F.2d 1101, 1116 (7th Cir.1992). We accord to the trial court great deference in its assessment of this balancing test. *Id.* In this case, the trial judge initially ruled that that evidence of drug use would not be admitted; however, he indicated a willingness to revisit the issue later in the trial. After hearing the arguments of counsel, the court determined that the evidence of the defendants' drug use was relevant to motive and possibly to plan or intent; it further determined that the probative value was not substantially outweighed by the danger of unfair prejudice. As a precaution, the court gave a limiting instruction that restricted the jury's consideration of the evidence. Our court has held that limiting instructions are sufficient to cure any potential prejudice resulting from the admission of Rule 404(b) evidence. *See Moore,* 115 F.3d at 1355; *Lloyd,* 71 F.3d at 1266; *United States v. Rivera,* 6 F.3d 431, 444 (7th Cir.1993), *cert. denied,* 510 U.S. 1130, 114 S.Ct. 1098, 127 L.Ed.2d 411 (1994).

We conclude that the district court properly weighed the Rule 404(b) factors and balanced the probative value and unfair preju-

16. *See United States v. Cunningham,* 103 F.3d 553, 556 (7th Cir.1996) (showing that "propensity" evidence does not overlap with "motive" evidence "when past drug convictions are used to show that the defendant in a robbery case is an addict and his addiction is offered as the motive for the robbery"), *cert. denied,* —— U.S. ——, 117 S.Ct. 1481, 137 L.Ed.2d 692 (1997); *United States v. Troop,* 890 F.2d 1393, 1401–02 (7th Cir.1989) (admitting evidence of drug addiction to show motive); *United States v. Cyphers,* 553 F.2d 1064, 1069–70 (7th Cir.) (admitting evidence of defendant's heroin purchase shortly after robbery to show motive), *cert. denied,* 434 U.S. 843, 98 S.Ct. 142, 54 L.Ed.2d 107 (1977); *see also United States v. Miranda,* 986 F.2d 1283, 1285 (9th Cir.), *cert. denied,* 508 U.S. 929, 113 S.Ct. 2393, 124 L.Ed.2d 295 (1993) (admitting evidence of drug habit to demonstrate motive to commit a bank robbery); *United States v. Kadouh,* 768 F.2d 20, 21 (1st Cir.1985) (admitting evidence of unemployed defendant's use of cocaine to show motive to commit crimes).

dice before admitting the evidence of the defendants' drug use. The court gave a limiting instruction to reduce the possibility of unfair prejudice. There was no abuse of discretion in the district court's admission of this evidence.

### C. *Mr. Treesh's Claims*

#### 1. Motion for Severance

■ At trial, the government introduced into evidence Mr. Brooks' statement to the FBI agents. The statement was a redacted version; every time Mr. Treesh's name was mentioned, his name was replaced by the phrase "another individual." The court approved the redaction and instructed the jury that Mr. Brooks' statement could be considered as evidence only against Mr. Brooks. When Agent Buck testified from the redacted version, the jury heard that "another individual" accompanied Mr. Brooks and Harth. When Harth testified, however, the jury learned that she, Mr. Brooks and Mr. Treesh committed the bank robbery.

Mr. Treesh sought severance; the district court denied his motion. Before this court he contends that the trial court's refusal to sever his case violated the Confrontation Clause. Once Harth testified, he claims, it was clear that Mr. Treesh was the "other individual" involved in the bank robbery.

■ The Confrontation Clause guarantees that an accused has the right to confront the witnesses against him and to cross-examine them. *Richardson v. Marsh*, 481 U.S. 200, 206, 107 S.Ct. 1702, 1706, 95 L.Ed.2d 176 (1987). At a joint trial, when a prior confession or statement of a non-testifying codefendant is admitted and that statement incriminates both defendants, its admission violates the defendant's right of cross-examination, despite instructions requiring the jury to consider the confession only against the confessing codefendant. *Bruton v. United States*, 391 U.S. 123, 126, 135–36, 88 S.Ct. 1620, 1622, 1627–28, 20 L.Ed.2d 476 (1968). However, the admission of a non-testifying codefendant's redacted confession, one that does not facially incriminate the non-confessing codefendant, when combined with proper limiting instructions,

does not violate the Confrontation Clause. *Richardson*, 481 U.S. at 211, 107 S.Ct. at 1709.

■ We review the denial of a severance motion for abuse of discretion. *United States v. Dimas*, 3 F.3d 1015, 1020 (per curiam) (7th Cir.1993). To prevail a defendant must show he suffered actual prejudice from the denial of the severance. *Moore*, 115 F.3d at 1361; *United States v. Pulido*, 69 F.3d 192, 207 (7th Cir.1995). Because a joint trial provides the best perspective on the evidence as a whole, we believe it "increases the likelihood of a correct outcome." *United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir.), *cert. denied*, 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987).

The district court did not abuse its discretion by denying the motion to sever. First, the Brooks statement did not facially incriminate the nonconfessing codefendant Treesh; Mr. Brooks' statement was admitted into evidence with Mr. Treesh's name redacted throughout. Second, the district court properly instructed the jury that the confession was admissible only against the defendant who confessed. We have held that the redaction of a defendant's name and its replacement with such references as "another person," combined with a limiting instruction, complies with the right of confrontation and satisfies *Bruton* and *Richardson*. See *United States v. Hubbard*, 22 F.3d 1410, 1421 (7th Cir.1994), *cert. denied*, 513 U.S. 1095, 115 S.Ct. 762, 130 L.Ed.2d 660 (1995); *United States v. Kreiser*, 15 F.3d 635, 638–39 (7th Cir.1994); *United States v. Gio*, 7 F.3d 1279, 1287 (7th Cir.1993).

Mr. Treesh asserts, however, that another factor must be considered: Harth's testimony at trial linked Mr. Treesh to the redacted confession as the "other individual" who committed the robbery with Mr. Brooks. In *Richardson*, the Supreme Court distinguished "[s]pecific testimony that 'the defendant helped me commit the crime' "—a Sixth Amendment violation—from "inferential incrimination," trial evidence which is not facially incriminating and becomes "so only when linked with evidence introduced later at trial." 481 U.S. at 208, 107 S.Ct. at 1707. The Court then concluded that, in the latter

case, there is no Confrontation Clause violation when the admitted confession of a non-testifying codefendant is properly redacted and when a proper limiting instruction is given. 481 U.S. at 211, 107 S.Ct. at 1709. In light of *Richardson,* we decline to find any Confrontation Clause violation in Mr. Treesh's case. In addition, we note that Mr. Treesh did not demonstrate actual prejudice: There was no showing that he "was unable to obtain a fair trial without severance, not just that a separate trial would have offered a better chance for acquittal." *United States v. Lopez,* 6 F.3d 1281, 1285 (7th Cir.1993). The district court did not abuse its discretion by denying his motion to sever.

### 2. Objection to Seating of Marshals Behind Defense Table

■ At trial, Mr. Treesh objected to the presence of four Deputy United States Marshals who were seated directly behind the defense table in the courtroom. He asserted that the jury would know they were not witnesses or spectators. The trial court denied his objection for reasons of security; it noted as well that the marshals were in civilian dress rather than uniform. Mr. Treesh now argues that, because both defendants were wearing hidden stun belts throughout the trial, the added security of the marshals behind the defendants was not necessary. Moreover, he claims, their presence destroyed any presumption of their innocence and led the jury to think that the defendants were dangerous criminals. Mr. Treesh requests a new trial.

■ The decisions of a district court concerning security in the courtroom are reviewed deferentially. A trial judge who is confronted with a potentially disruptive defendant or witness must consider the security of his courtroom and of all those who are in it. As we discussed in *Lemons v. Skidmore,* 985 F.2d 354 (7th Cir.1993), the trial judge has wide discretion in determining what is necessary to maintain the security of the courtroom. *Id.* at 357–58. However, decisions in this matter are the judge's responsibility; he "may not delegate his discretion to another party." *Id.* at 358 (holding that, in prison inmate civil rights action, trial judge

should hold hearing to determine what, if any, restraints are necessary). Moreover, a defendant is entitled to the minimum restraints necessary and to the least obvious ones, as well, to minimize the likelihood of prejudice to the jury. *Id.* at 359. Thus the judge must decide whether the defendant is a dangerous person prone to outbursts of violence, whether he must be restrained and, if so, what minimal restraint will appropriately protect the courtroom.

In this case, both defendants had a history of violence. Mr. Brooks already had been convicted of attempting to escape. Mr. Treesh, under a sentence of death in Ohio, had destroyed a glass wall in the prison and had threatened to escape and to kill a marshal in the process. The court was justified in putting stun belts on the defendants and in placing deputies behind the defendants to cover the potential security risks. We note that the court chose methods of restraint that minimized the risk of prejudice. The stun belts were hidden under the defendants' clothing, and the marshals were in plain clothes. Even with these security measures, Mr. Brooks assaulted his court-appointed attorney at the sentencing hearing. We hold that the district court acted well within its discretion to position deputy marshals behind the defendants during the court proceedings.

### 3. Objection to Jury Instruction

■ Mr. Treesh also has raised an objection to the jury instruction concerning evidence of other acts. As mentioned above, the court agreed to modify the instruction; however, when the instruction was read to the jury, the original rather than the revised instruction was read. No objection was raised. Mr. Treesh asserts that the phrase "use of cocaine" was added so that the jury would not think that the "other crimes" were the ones for which Harth had been convicted. The defendant asserts that the court's failure to give this modification was highly prejudicial to the defendants.

■ We review the jury instruction, to which no objection was raised, for plain error. *United States v. Benitez,* 92 F.3d 528, 533 (7th Cir.1996). Under the plain error standard, an improper instruction can justify

reversal only if the error is of such magnitude that it probably changed the outcome of the trial. *United States v. Griffin,* 84 F.3d 912, 925 (7th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 495, 136 L.Ed.2d 387 (1996). This instructional error does not rise to such a level. We note first that the only "other acts" of the defendants that were known to the jury were drug use. Because there was no evidence of other crimes before the jury, the added words in the instruction were unnecessary. Moreover, there was no evidence linking the defendants to the crimes for which Harth was convicted. Finally, the jury was instructed that Harth's convictions could be used only to evaluate her credibility. We conclude that the trial court's mistaken reading of the "other acts" jury instruction certainly was not of such magnitude that it probably changed the outcome of the trial. There was no clear error.

### Conclusion

For the foregoing reasons, the judgments of conviction of Mr. Brooks and Mr. Treesh are affirmed.

AFFIRMED.