142 F.3d 440
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
United States of America, Plaintiff-Appellee,
v.
Terrance L. JONES, Defendant-Appellant
 No. 97-3251.
 United States Court of Appeals, Seventh Circuit.
 Argued April 28, 1998.
Decided May 6, 1998.
 
 Appeal from the United States District Court for the Northern District of Indiana, Fort Wayne Division. No. 1:95-CR-35 William C. Lee, Chief Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. KENNETH F. RIPPLE, Hon. TERENCE T. EVANS, Circuit Judges.
 
 ORDER
 
 1
 Following a jury trial, Terrance L. Jones was convicted of aiding and abetting an armed bank robbery in violation of 18 U.S.C. §§ 2, 2113(a),(d) and using a firearm in relation to a violent crime in violation of 18 U.S.C. § 924(c)(1). The district court sentenced Jones to 51 months' incarceration for the bank robbery and 240 months' incarceration for the firearm conviction due to his previous conviction under § 924(c)(1). On appeal, Jones maintains that there was insufficient evidence to establish his identity. We affirm the district court's judgment.[1]
 
 
 2
 At trial, employees of the Professional Federal Credit Union in Fort Wayne, Indiana, testified that on December 1, 1995, two men entered the credit union at approximately 9:30 a.m. Thea Reaser, a teller at the credit union, testified that one of the men came to her teller window with a gun and demanded money, which she gave to him. The other man went to the credit union's vault. Reaser testified that the men were wearing dark, hooded sweatshirts pulled over their heads and bandanas over the lower portion of their faces. Maren Nance, a branch teller, testified that one of the men grabbed the teller next to her and the other man went to the credit union's vault. She testified that the man who approached her was pointing a gun. She, too, stated the men wore dark, hooded sweatshirts and bandanas. She further testified that one of the men wore dark-colored baggy pants and the other wore light-colored baggy pants.
 
 
 3
 Kathy Gamez, an assistant manager, testified that she was working in the vault when a man holding a gun entered the vault and demanded money. This man pulled Gamez out of the vault and asked her where the rest of the money was located. She told him where the money was located and then gave it to him. She testified that the man wore a dark, hooded sweatshirt, dark pants, and a bandana. When she came out of the vault, she saw the other robber. She testified that both men were carrying guns. Angela Peterson, the branch manager, testified that she observed the robbery and that one of the robbers pointed a gun at her. None of these witnesses could identify Jones as one of the robbers to the police or Federal Bureau of Investigation (FBI).
 
 
 4
 Special FBI Agent, Stephen Kell, testified that, through his investigation of the bank robbery at the Professional Federal Credit Union, he uncovered a witness that could identify Jones as one of the perpetrators. Costella Dunbar, Jones' aunt, was outside of the credit union at the time of the robbery. She testified that on December 1, 1995, she and her friends went to the credit union so that one of her friends could cash a check. While one friend went inside, Dunbar remained in the front passenger seat of the car and her other friend stayed with her. The car was parked in the first row of parking spaces in front of the credit union because the car's owner had a handicapped parking sticker. Dunbar testified that she saw her nephew, Jones, arrive at the credit union and that he was dressed in a gray sweatshirt and khaki pants with a red scarf around his neck. She testified the she saw another person with Jones, but did not know who the person was and could not recall what he was wearing. She testified that Jones came around the corner of the credit union building and passed directly in front of the car. She testified that Jones had nothing covering his face at the time. Before the men entered the building, she saw the other man drop a gun and retrieve it. After Dunbar and her friend saw the gun, they went across the street and called the police. Dunbar also testified that she saw the two men leave the credit union while she was across the street. At trial, Dunbar made an in-court identification of Jones. She had also picked Jones out of a photo array, to which she testified. Dunbar admitted that she had expressed some doubt to Agent Kell about Jones' identification before trial, but that at the time of trial she had no doubt that Jones was one of the robbers. She stated that she had expressed her doubt because she was nervous and scared.
 
 
 5
 Defense witness, Anissa Cole, testified that Jones had stayed at her apartment the night before the robbery and was there on the morning of December 1, 1995. She testified that Jones' friend, Mark Green, came over to her apartment that morning. Mark Green testified that he picked up Jones at Cole's apartment around 11:00 a.m. or 11:30 a.m. and that they drove around in his car all day.
 
 
 6
 Jones maintains that the government failed to produce sufficient evidence that he was the person who committed the charged crimes so that a reasonable jury could find him guilty of the bank robbery and firearm charges beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). He asserts that the testimony of Costella Dunbar was based on a fleeting glance of a person who wore a hooded sweatshirt. He also points out that she had expressed some doubt about his identification to FBI Agent Kell. Jones also asserts that the testimony of Anissa Cole and Mark Green constitutes an alibi defense.
 
 
 7
 Viewing the evidence in a light most favorable to the government, there was ample evidence of Jones' identification and guilt. The government's key witness, Costella Dunbar, was Jones' aunt and had recognized him while sitting in a car directly in front of the credit union. She described his exact clothing. The credit union employees' descriptions of the robbers were very similar, corroborating Dunbar's testimony. Dunbar made an in-court identification of Jones and also picked Jones out of a photo array. She also testified that she saw Jones and the other robber leave the credit union. Although she had doubt about Jones' identity before trial, at trial she explained that she had been scared and nervous. Although Jones presented alibi testimony, the jury heard the testimony and believed the government's witnesses instead. It is well within the province of the jury to make such credibility determinations and the record supports their conclusion. United States v. Brooks, 125 F.3d 484, 493 (7th Cir.1997).
 
 
 8
 Jones has not overcome the very high burden in his attempt to overturn the jury's verdict. United States v. Moore, 115 F.3d 1348, 1363 (7th Cir.1997). Deferring to the credibility determinations of the jury, we conclude that there was sufficient evidence from which a rational jury could find guilt beyond a reasonable doubt. See id. Therefore, we affirm the district court's judgment.
 
 AFFIRMED
 
 
 [1]
 On March 24, 1998, Jones filed a "notice of ineffective assistance of counsel" in which he claimed that his appellate counsel had not assisted him properly in preparing for appeal. Specifically, Jones asserted that counsel had not forwarded the district court record or appellate brief to him and that counsel refused to correspond with him. Counsel responded that he had forwarded the appellate brief and the parts of the record available, except for the trial transcript, which as a matter of office policy counsel does not provide to court-appointed clients. We construed Jones' "notice of ineffective assistance of counsel" as a "motion to direct counsel to confer and assist him," and denied the motion on April 17, 1998