UNITED STATES of America,
Plaintiff–Appellee,

v.

Kenneth P. DILLON, Defendant–
Appellant.

No. 96–3433.

United States Court of Appeals,
Seventh Circuit.

Argued April 10, 1998.

Decided July 24, 1998.

Andrew B. Baker, Jr. (argued), Office of the United States Attorney, Dyer, IN, for Plaintiff–Appellee.

Lori S. Klingman (argued), Wilmette, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and BAUER and KANNE, Circuit Judges.

KANNE, Circuit Judge.

A jury convicted Kenneth P. Dillon of knowingly making false statements to licensed firearms dealers in connection with the purchase of firearms and of wilfully receiving firearms while under state court indictment for a crime punishable by more than one year in prison. Dillon raises two challenges to his conviction: First, he argues that the district court erred in concluding that his confession was voluntary and admitting it into evidence. Second, he claims that the government produced insufficient evidence to convict him. Because we find no error in the proceedings below, we affirm.

I. History

Before a purchaser may remove a gun from a store, the government requires that person to fill out Treasury Form 4473 for the transaction. The purchaser must complete the top portion (section A). This section consists of a series of questions, including whether or not the purchaser is under indictment or information for a crime punishable by imprisonment for a term exceeding one year. The purchaser must answer "no" to all of the questions in order to remove the gun from the store.

Between April 1993 and March 1994, Dillon purchased approximately twenty handguns and pistols from two pawn shops in the Calumet region of northwest Indiana, Cash–Indiana, Inc. and Jack's Loan Office. The problem with these purchases is the fact that on September 24, 1993 Dillon was charged with theft. Theft in Indiana is a Class D felony which carries with it a sentence of half a year to three years in prison and the possibility of a $10,000 fine. Yet, Dillon answered "no" to the Form 4483 question on whether he was under indictment.

On April 21, 1995, a federal grand jury returned an eight count indictment against Dillon. Counts one through four alleged that he knowingly made false and fictitious written statements to a licensed firearms dealer while purchasing a firearm in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2); counts five through eight charged that he wilfully received firearms which had been shipped in interstate commerce while under indictment for a crime punishable by a term of imprisonment of more than one year in violation of 18 U.S.C. §§ 922(n) and 924(a)(1)(D).

On May 22, 1995, Bureau of Alcohol, Tobacco, and Firearms ("ATF") agents arrested Dillon in Merrillville, Indiana at the Olive Garden Restaurant where he worked. As ATF agent Roger Crafton later explained, agents transported Dillon to the ATF office in Merrillville. After changing vehicles, the agents escorted Dillon to the United States Marshal's office in Hammond for processing. The processing occurred at approximately 3:30 p.m. The agents then took Dillon to Magistrate Judge Rodovich for an initial appearance. There, the United States Attorney read Dillon the charges and possible penalties pending against him. The magistrate judge informed Dillon of his rights and the fact that he did not have to talk with the agents and then released Dillon on a $20,000 unsecured bond.

Though he was free to go, Dillon requested a ride from Hammond back to Merrillville, a distance of approximately 25 miles. Agent Crafton obliged and drove him to ATF's

Merrillville office. During the trip, Dillon asked if there was anything he could do to help himself. Agent Crafton told him that he had the option of becoming an informant for the government and assisting them in investigating criminal activity in the area. At the office, Agent Crafton warned Dillon that any statements he might make could be incriminating and gave him an Advice of Rights Form which was read aloud to Dillon as he examined the form. Dillon signed the form, made incriminating comments, and prepared a written statement in the form of an affidavit. In these statements, he admitted to his gun trafficking activities. He also specifically stated that he entered Cash–Indiana on December 30, 1993 to purchase a gun for a drug dealer he knew. Dillon read and signed a Confidential Source Agreement. According to Agent Crafton, no one threatened Dillon.

After an eight month delay,[1] Dillon recalled the events much differently. In a hearing to determine whether his statement was voluntary, he testified that the agents took him to the Merrillville field office after he was arrested. There, according to Dillon, agents allegedly interrogated him for two hours and threatened to shoot him if he did not cooperate. Dillon also testified that no one read him his rights, that ATF agents forced him to sign a cooperation agreement, and that they forced him to produce a handwritten statement or else suffer physical harm. Although he admitted that he wrote the statement, Dillon claimed that the agents dictated his statement to him line by line. He also asserted that the agents promised to pay him money if he became an informant.

During his direct examination, Dillon did not mention his appearance before the magistrate judge in Hammond. On cross-examination, he remembered that event but estimated that it happened around 9:00 p.m. Dillon did not recall whether the magistrate informed him of his rights, and he did not remember anyone telling him that he was free to leave at the end of that proceeding. Dillon then stated that the agents returned

him to the Olive Garden at approximately 8:00 p.m. that evening.

After reviewing the exhibits and considering the credibility of Dillon and Agent Crafton, the district court found Dillon's testimony to be inconsistent and not credible and the testimony of the agent to be credible. Based on these findings, the court determined that Dillon made his statements knowingly and voluntarily.

The case proceeded to trial before a jury in March 1996. The government introduced Dillon's written statement as evidence and called to testify each of the sales clerks with whom Dillon interacted in making the various gun purchases. Its first witness was Catherine Batz, the owner of Cash–Indiana. Batz testified that all of her sales clerks must participate in a training session to learn the proper procedure for selling a firearm. This training includes a requirement that the sales clerks read an ATF manual on the subject. Batz stated that Cash–Indiana requires the purchaser to complete Treasury Form 4473 unless the purchaser shows that he or she cannot read or write. Dillon purchased 15 handguns from Cash–Indiana, Inc. and completed Form 4473 for each transaction.

Batz also testified about a transaction she handled for Dillon on April 16, 1993 in which he bought a semi-automatic pistol. She stated that Dillon completed the top portion of Form 4473, answering "no" to all of the questions. She also testified that, based on her observations of Dillon, she had no reason to believe that he did not understand the questions on any of the forms.

Michael Penix, a sales clerk at Cash–Indiana, also assisted Dillon in a number of the transactions. He testified that he sold Dillon weapons on December 30, 1993, January 4, 1994, and March 17, 1994. In each of these transactions, Dillon completed the top portion of Form 4473 and did not ask any questions about how to fill out the form. Penix also stated that he followed the same

---

1. During that eight month period, the grand jury returned a superseding indictment which restated the eight counts with additional facts, Dillon agreed to plead guilty but failed to appear for his change of plead hearing, and the government had a warrant issued for his arrest, arrested him, and moved to rescind the plead agreement. The district court granted that motion.

procedures for every purchase even though he knew Dillon from previous transactions. Finally, he testified that he had no reason to believe that Dillon did not understand the questions on the form or that Dillon had a learning disability or that Dillon did not answer the questions truthfully.

Likewise, Sherman Thomas, a sales manager at Jack's Loan Office, assisted Dillon in purchasing a gun. According to Thomas, Jack's follows the same procedures as Cash–Indiana when selling a firearm, including the completion of Form 4473. Thomas testified that he handled a sale to Dillon on December 31, 1993, in which Dillon completed section A of Form 4473. Thomas stated that Dillon did not ask any questions about the form and never gave him any indication that he did not understand the questions on the form.

Dillon then took the stand. He admitted that he purchased the various guns as alleged in the indictment. His defense was that he cannot read and, therefore, was unaware of the contents of the forms he signed or completed. Although he graduated from high school and attended adult reading classes at a local community college for additional reading instruction, Dillon testified that he probably read at a third grade level. He then repeatedly denied completing section A of Treasury Form 4473 even though he did sign that form every time he purchased a firearm. According to Dillon, after inquiring about a gun purchase, he would show his firearm license and identification. The sales clerk would ask him whether he had ever been convicted of a felony. He would respond "no," and the clerk would then complete Form 4473. The clerk would ask that he sign the form before he left with the gun.

The jury convicted Dillon on all eight counts. On August 16, 1996, the district court sentenced him to twenty-one months' imprisonment on each count with the sentences to run concurrently and three years' supervised release.

## II. Analysis

Dillon raises two issues on appeal. First, he claims that we must overturn his convictions because ATF agents coerced him into

giving an involuntary confession. Second, he challenges whether the government produced sufficient evidence to support his convictions.

### A.

Dillon claims that ATF agents used threats of physical coercion and a promise of leniency to induce him to confess involuntarily. A trial court may admit a confession into evidence only if the accused made it voluntarily. *See Colorado v. Connelly,* 479 U.S. 157, 166, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *United States v. Williams,* 128 F.3d 1128, 1131 (7th Cir.1997). A confession is voluntary if, in light of the totality of the circumstances, the confession is the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will. *See Watson v. DeTella,* 122 F.3d 450, 453 (7th Cir.1997); *United States v. Sablotny,* 21 F.3d 747, 750 (7th Cir.1994); *United States v. Haddon,* 927 F.2d 942, 945 (7th Cir.1991). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Connelly,* 479 U.S. at 167, 107 S.Ct. 515.

" '[W]hether a confession is voluntary is a matter of law that must be reviewed de novo in this court,' but 'the determination of the historical facts of the case are the proper domain of the trial court and ... our review of its findings in that regard will be for clear error.' " *United States v. Brooks,* 125 F.3d 484, 492 (7th Cir.1997) (quoting *United States v. D.F.,* 115 F.3d 413, 419 (7th Cir. 1997)). A finding of fact is clearly erroneous when a review of the entire record leaves us with a definite and firm conviction that a mistake has been made. *See United States v. Duguay,* 93 F.3d 346, 349 (7th Cir.1996); *United States v. Barnes,* 909 F.2d 1059, 1067 (7th Cir.1990).

In this case, Dillon claims that ATF agents used threats of physical violence to scare him into confessing involuntarily. This challenge boils down to a question of credibility. Dillon is rearguing his version of the

events of May 25, 1995, and his version is wildly different from Agent Crafton's. Dillon argues that ATF agents interrogated him for two hours without reading him his rights, threatened to shoot him if he did not cooperate, and forced him to write a confession and sign a cooperation agreement. Agent Crafton testified that no one threatened to use physical force to cause Dillon to confess. He also stated that Dillon made self-incriminating statements after Crafton advised him of his rights and after Dillon signed an Advice of Rights Form because Dillon hoped to receive leniency for cooperating with the government.

■ In finding Dillon's confession voluntary, the district court accepted the testimony of Agent Crafton and discredited Dillon's testimony as inconsistent and not credible. We defer to a district court's credibility determinations "unless the district judge has chosen to credit *exceedingly* improbable testimony." *United States v. Hubbard,* 61 F.3d 1261, 1278 (7th Cir.1995); *see also Brooks,* 125 F.3d at 492. As Dillon has not made any showing that Agent Crafton's testimony was exceedingly improbable, we defer to the district court's determination and find no error in its findings of fact.

■ Dillon also contends that his statements were involuntary because the agents promised to bring any cooperation on his part to the prosecutor's attention. Dillon believes that this psychological inducement enticed him into saying exactly what the agents wanted to hear. Contrary to Dillon's pleas of coercion, however, we have repeatedly upheld this tactic as one that allows a defendant to make a rational decision. *See United States v. Westbrook,* 125 F.3d 996, 1005 (7th Cir.1997) (concluding that this tactic is not improperly coercive conduct); *United States v. Rutledge,* 900 F.2d 1127, 1130 (7th Cir.1990) (holding that "[g]overnment is not forbidden to 'buy' information with honest promises of consideration"); *United States v. Pace,* 898 F.2d 1218, 1246 (7th Cir.1990) (same); *United States v. Rodgers,* 755 F.2d 533, 546 (7th Cir.1985) (same); *United States v. Springer,* 460 F.2d 1344, 1346–47 (7th Cir.1972) (same). This approach is not inherently coercive and by itself

"does not transform a defendant's otherwise voluntary statement into an involuntary one." *Westbrook,* 125 F.3d at 1005. Because Dillon does not raise any additional challenges to the district court's decision that he gave his statement voluntarily, we hold that the district court did not err in reaching this conclusion.

### B.

■ Dillon also claims that the government did not present sufficient evidence for a jury to conclude beyond a reasonable doubt that he knowingly violated 18 U.S.C. § 922(a)(6). In making this challenge, Dillon faces a " 'nearly insurmountable hurdle.' " *United States v. Hickok,* 77 F.3d 992, 1002 (7th Cir.1996) (quoting *United States v. Teague,* 956 F.2d 1427, 1433 (7th Cir.1992)). Usually, in examining a sufficiency of the evidence claim, we review the record in the light most favorable to the government to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also United States v. Alexander,* 135 F.3d 470, 474 (7th Cir.1998); *United States v. Billops,* 43 F.3d 281, 284 (7th Cir.1994); *United States v. Howell,* 37 F.3d 1197, 1201 (7th Cir.1994). However, Dillon did not move for acquittal at the close of the government's case, at the close of all the evidence, or within seven days of the verdicts. *See* Fed. R.Crim.P. 29. Thus, Dillon has waived his appellate challenge to the sufficiency of the evidence, and we will reverse his conviction only if he demonstrates " 'a manifest miscarriage of justice.' " *Hickok,* 77 F.3d at 1002 (quoting *United States v. Archambault,* 62 F.3d 995, 998 (7th Cir.1995)); *see also United States v. James,* 923 F.2d 1261, 1267 (7th Cir.1991).

■ A jury convicted Dillon of four counts of violating 18 U.S.C. § 922(a)(6), which provides that:

> It shall be unlawful ... for any person in connection with the acquisition or attempted acquisition of any firearm ... from ... [a] licensed dealer ... know-

ingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious or misrepresented identification, intended or likely to deceive such ... dealer ... with respect to any fact material to the lawfulness of the sale or other disposition of such firearm ... under the provisions of this chapter.

To sustain a conviction that a defendant violated § 922(a)(6), the government must introduce evidence to establish (1) that the defendant knowingly made a false statement to a licensed firearms dealer, (2) that the false statement was made in acquisition of a firearm, and (3) that the false statement was intended to or likely to deceive the firearms dealer as to the lawfulness of the sale of a firearm. *See United States v. Petitjean,* 883 F.2d 1341, 1346 (7th Cir.1989); cf. *United States v. Rahman,* 83 F.3d 89, 92–93 (4th Cir.1996); *United States v. Gonzalez,* 71 F.3d 819, 833 (11th Cir.1996).

■ No miscarriage of justice has occurred in this case. Though Dillon argues that he did not read the form and could barely read and write, the government presented more than sufficient evidence to establish that he completed the top portion of Form 4473 and understood his actions in doing so. First, it presented the forms that Dillon completed. These forms require the purchaser to print legibly his name, height, weight, race, address, date of birth, and place of birth as well as the answer to eight questions about the purchaser's eligibility to purchase a firearm. Second, the government called the sales clerks and proprietors who did business with Dillon to testify that they never filled out the top portion of Form 4473. Third, it used Dillon's written statement to show that he can effectively communicate in writing. Finally, Dillon proved his reading ability during cross-examination when he understood and relied upon a portion of the transcript of his earlier state court proceedings in answering the government's questions. The jury had ample evidence from which to convict Dillon of violating 18 U.S.C. § 922(a)(6). Dillon's arguments otherwise are meritless.

For the above reasons, we Affirm the judgment of the district court.