**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 5, 2005
Decided August 26, 2005

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

No. 04-3507

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,*<br><br>v.<br><br>CEDRIC FRANKLIN,<br>*Defendant-Appellant.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>No. 04 CR 121<br><br>James F. Holderman,<br>*Judge.* |

**O R D E R**

Cedric Franklin confessed to a gun crime during questioning by authorities in his home. The district court denied Franklin's motion to suppress the oral and written confessions, finding that the questioning was consensual and the statements voluntary. Franklin entered a conditional guilty plea and now challenges the suppression ruling. We affirm.

Franklin was charged with making a false statement in the acquisition of a firearm, 18 U.S.C. § 922(a)(6), after he admitted misrepresenting himself as the purchaser of several guns that he actually bought on behalf of another man. Franklin moved to suppress his oral and written confessions, claiming that they were obtained during a custodial interrogation in violation of *Miranda* and, additionally, were rendered involuntary when the interviewers falsely implied he would not be arrested if he was forthcoming.

At the hearing on the motion to suppress, Franklin and two ATF agents testified. Franklin, a 40-year-old high school graduate with some college experience, testified that on April 7, 2003, he lived with his mother in her home. At approximately 9:00 or 10:00 a.m., he said, two ATF agents came to the Franklin home with two Chicago police officers. Franklin told his mother to let them in the house because he assumed they were there about a domestic dispute. Franklin asked if the investigators were there about the domestic dispute; they told him no, that they were there to "get some information about some weapons that were purchased, that I purchased." According to Franklin, ATF agent Christopher Labno "instructed" him to go into the kitchen. Labno, said Franklin, "asked" or "instructed" him to sit with the agent at the table, but the other investigators remained standing.

Franklin continued that initially he "lied" and said that the guns he bought were later stolen from him. Then, according to Franklin, Agent Labno "conveyed" that he knew Franklin was lying, and said that Franklin would "go to jail" if he did not tell the truth. Franklin added that the agent said that they "couldn't leave" until Franklin told them where the guns were.

Franklin testified that the investigators questioned him for approximately two hours, and they did not explain that he was free to refuse to speak with them. Franklin asked if he was "going to jail" or would be charged with a crime and was told no. When Franklin began to stand, asking if the investigators wanted him to go upstairs and retrieve receipts for the guns, he was told no, felt a "slight tap," and sat back down. On cross-examination, Franklin conceded that he was not restrained at any point, and that he used a washroom near the kitchen without escort or interference. After Franklin returned from the washroom, he signed a written statement that Agent Labno had drafted from his answers during the questioning. The statement included a stipulation that the officers had not made any threats or promises to Franklin, although Franklin did not recall reading that portion of the statement. Once they had the signature, the investigators departed, leaving Franklin behind.

The testimony of the two agents differed slightly from Franklin's. Agent Labno testified that when they arrived at the Franklin home, Ms. Franklin opened the door and "indicated" that the officers could come into the vestibule. Franklin came to the vestibule, and Labno told him they were there regarding "some of his property that had been recovered." According to Labno, Franklin wanted to know what property, and Labno asked if there was a place they could sit down and talk; perhaps the kitchen. Labno testified that Franklin "said yes" and led the way to the kitchen. Once there, Franklin sat at the table with Labno and the other ATF agent, and Labno produced ATF forms documenting gun sales to Franklin, who acknowledged his signature on the forms. Franklin denied that he still had the weapons and asserted that they had been stolen. After Labno expressed disbelief, Franklin admitted that the guns had not been stolen, but that he purchased the guns for someone else. As Franklin and Labno

talked, Labno wrote a statement reflecting Franklin's answers. During this time Franklin asked if the officers suspected him in any crimes involving the guns he bought, or if he was under arrest; Labno testified that he answered "no" to both questions and said he was there to "find out how the guns got from the legitimate purchase to be used in the crimes." Labno acknowledged that he declined the offer when Franklin proposed going upstairs to collect the receipts but denied preventing Franklin from leaving the table. Labno also denied that he or anyone else told Franklin that he would go to jail if he did not tell the truth, or that the investigators could not leave until they knew where the guns were. Labno further denied that Franklin was restrained in any way.

After approximately one hour, Franklin excused himself to use the washroom. When Franklin returned, said Labno, he read over the written statement the agent had been preparing, made corrections, and signed the form.

The second ATF agent, Mirko Martinovich, corroborated Labno's testimony. Martinovich testified that Franklin was not touched or restrained, nor was he told he would be jailed if he did not tell the truth or that the officers couldn't leave until they knew where the guns were.

The district court denied the motion, ruling that *Miranda* warnings were unnecessary because Franklin was never in police custody during the interview. The court explained that under the "totality of the circumstances," including being questioned in the kitchen and giving "consent," as Franklin had done, a reasonable person would not have believed his freedom was restrained, especially since the officers told him he was not under arrest. In addition, the district court found that Franklin's statements were voluntary. In denying the motion to suppress, the court did not make explicit credibility findings.

Franklin was convicted and sentenced to six months' incarceration and two years' supervised release.

Franklin challenges the denial of his motion to suppress, arguing that he was in custody and his statements were involuntary.

A suspect is in custody and entitled to *Miranda* warnings if restrained to a degree associated with a formal arrest. *United States v. Abdulla*, 294 F.3d 830, 834 (7th Cir. 2002). Whether the degree of restraint is akin to formal arrest is determined under the totality of circumstances as measured by how a reasonable person would have understood the situation. *Ochana v. Flores*, 347 F.3d 266, 270 (7th Cir. 2003). Factors in evaluating the totality of circumstances include whether the authorities: (1) exerted control over the environment, (2) engaged in prolonged, coercive, and accusatory questioning, (3) used subterfuge to induce self-incrimination, (4) physically restrained or otherwise significantly curtailed the suspect's freedom of movement, or, (5) whether,

and to what extent, the suspect was led to reasonably believe that he could interrupt the questioning. *Sprosty v. Buchler,* 79 F.3d 635, 641 (7th Cir. 1996); *United States v. Griffin,* 922 F.2d 1343, 1349 (8th Cir. 1990).

In denying the motion to suppress, the district court did not explicitly resolve any disputed facts, stating instead his ultimate conclusion that under the totality of the circumstances, including Franklin's consent to be interviewed and the location of the questioning, a reasonable person would not have believed that he was in custody. We conclude that the district court applied the relevant standards—"totality of circumstances" and "reasonable person"—and infer either that the district court discredited Franklin's version of disputed events or concluded that the circumstances described by Franklin did not amount to a custodial interrogation. *See United States v. Bell,* 969 F.2d 257, 259 (7th Cir. 1992). The questioning took place in Franklin's home, and, although familiar surroundings do not preclude a custodial situation, *see Sprosty,* 79 F.3d at 641-42, the police exert less control over a private home than in a police station or vehicle, and other factors demonstrate that Franklin had control of the environment: he invited them inside his home and used the restroom without restraint. *See United States v. Beckwith,* 425 U.S. 341, 347-48 (1976) (relaxed interview in suspect's home did not implicate *Miranda*); *see also United States v. Kontny,* 238 F.3d 815, 817 (7th Cir. 2001). Moreover, custody is less likely where a suspect voluntarily acquiesces to questions, as Franklin did here. *See Griffin,* 922 F.2d at 1351. Finally, there is no indication that Franklin was restrained in any way. *See id.* at 1350 (lack of restraint indicates absence of custody).

Franklin's second argument is that police officers impermissibly used psychological ploys and deceptive tactics, including accusing him of lying, telling him they could not leave until they knew what happened to the guns, and promising that he would not be arrested if he told the truth; allegations that the agents denied. Officers are free to confront a suspect about his lies, or even mislead a suspect during an interview, so long as the defendant can still make a rational decision. *See United States v. Ceballos,* 302 F.3d 679, 694-95 (7th Cir. 2002). Statements induced by false promises of leniency may be inadmissible. *See United States v. Dillon,* 150 F.3d 754, 757 (7th Cir. 1998). But, again, while the district court made no explicit findings of fact or credibility determinations, this court can infer that the district court accepted the agents' testimony, *see United States v. Toro-Pelaez,* 107 F.3d 819, 825-26 (10th Cir. 1997), that no promise of leniency was made.

AFFIRMED.