NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 22, 2007
Decided March 14, 2007

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-3695

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 05 CR 30161 |
| MARIO GRIMES, *Defendant-Appellant.* | Michael J. Reagan, *Judge.* |

## O R D E R

A jury found Mario Grimes, an inmate at the Federal Correctional Institution in Greenville, Illinois, guilty of forcibly assaulting a correctional officer while that officer was performing an official duty. *See* 18 U.S.C. § 111(a)(1). After concluding that the correctional officer had suffered "bodily injury" as defined by the sentencing guidelines, the district court applied a two-level increase to Grimes's base offense level. *See* U.S.S.G. § 2A2.4(b)(2). The district court calculated his guidelines imprisonment range at 63 to 78 months and sentenced him to 72 months. Grimes appeals, arguing that the evidence was insufficient to support his conviction and that the district court erred in applying the two-level increase. We affirm the judgment of the district court.

Grimes was assigned to the prison's Special Housing Unit (SHU) after he was caught fighting with another inmate. In SHU, he typically was confined to his cell except during recreation time, or when he had visitors, or when he used the law library. Whenever he was outside of his cell, Grimes was escorted by a correctional officer. The officer who escorted Grimes to the recreation area on August 17, 2005, reported that Grimes struck him multiple times, causing injury. As a result, Grimes was charged in Count Six of a nine-count indictment with forcibly assaulting the correctional officer in violation of § 111(a)(1). The other eight counts of that indictment are not relevant to this appeal (Grimes pleaded guilty to seven of the counts and was acquitted at trial on the eighth).

At trial, Correctional Officer Eric Walters testified that on the morning of August 17, 2005, he arrived at Grimes's cell to escort him to the recreation cage. While watching Grimes get dressed, Walters observed him pick up an object from his desk—which Walters believed to be some type of contraband—and conceal it inside the front of his jumpsuit. Walters then cuffed Grimes's hands behind his back, allowing his shoulders and elbows to move freely. Rather than escort Grimes to the recreation cage, however, Walters told him he would be strip-searched because he put something in his jumpsuit. Grimes responded that he was not going to be searched and demanded that Officer Walters take him back to his cell. Walters testified that, as he tried to lead Grimes to the stairway going into the strip cells, Grimes became combative and broke away. He then began swinging his elbows, striking Walters in the upper arms and chest area while yelling, "Get . . . off me or I'm gonna bust you up!"

Officer Walters continued that Correctional Officer Michael Wright, who was nearby when Grimes began striking Walters, helped subdue the prisoner and lead him to a holding cell to be strip-searched. Both officers testified that, once they were inside the cell, Grimes bent over and kicked backwards, striking Officer Walters on the left side of his body in his upper stomach and lower chest. Officer Wright also testified that Grimes was able to move his shoulders and elbows freely while handcuffed, that he saw Grimes hit Walters with his elbow at least once, and that he observed Grimes kick Walters while they were all in the holding cell together. As a result of Grimes's actions, Walters testified, he received a small bruise to his upper chest.

After the jury found him guilty, the probation officer who prepared the Presentence Investigation Report (PSI) started with a base offense level of 10 for this count. *See* U.S.S.G. § 2A2.4. The probation officer also recommended applying a three-level increase because the offense involved bodily contact, *id.* § 2A2.4(b)(1), and a two-level increase because Officer Walters suffered bodily injury during the assault, *id.* § 2A2.4(b)(2). Grimes objected to the two-level increase under § 2A2.4(b)(2) because, he argued, the injury suffered by Walters did not qualify as a "bodily injury" as defined in the commentary to U.S.S.G. § 1B1.1.

The district court concluded that Officer Walters's chest bruising was the type of injury for which a person would ordinarily seek medical attention and denied Grimes's objection. Then, noting that Grimes had pleaded guilty to seven other counts before the jury convicted him on Count Six, the court increased his highest offense level, which was 15 for Count Six, by five levels under U.S.S.G. § 3D1.4. The court thus determined that Grimes's appropriate guidelines range was 63 to 78 months' imprisonment based on a total offense level of 20 and his Category V criminal history. After examining the aggravating and mitigating factors under § 3553(a), the court ultimately sentenced him to 72 months' imprisonment.

On appeal, Grimes first argues that the trial evidence was insufficient for a jury to find beyond a reasonable doubt that he assaulted Officer Walters. When reviewing challenges to the sufficiency of the evidence, we view all evidence in the light most favorable to the government. *United States v. Hale*, 448 F.3d 971, 982 (7th Cir. 2006). We will reverse a jury's verdict only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*; *United States v. Johnson*, 437 F.3d 665, 675 (7th Cir. 2006). As we have often stated, defendants challenging the sufficiency of the evidence at trial face a "nearly insurmountable" hurdle. *Hale*, 448 F.3d at 982; *United States v. Dillon*, 150 F.3d 754, 758 (7th Cir. 1998); *United States v. Teague*, 956 F.2d 1427, 1433 (7th Cir. 1992).

To meet its burden of proof on the assault charge, the government had to show that (1) Grimes forcibly assaulted a Federal Correctional Officer, (2) the victim was an officer or employee of the United States and was performing an official duty at the time of the assault, (3) Grimes acted knowingly, and (4) Grimes made actual physical contact with the officer. *See* 18 U.S.C. § 111(a)(1); *United States v. Valery*, 437 F.3d 626, 630-33 (7th Cir. 2006). Grimes contends that the government failed to prove the first and fourth elements because it would not have been possible for him to move his elbows and shoulders while his hands were handcuffed behind his back. Furthermore, Grimes argues, the government did not prove that he kicked a correctional officer because Officers Walters and Wright testified inconsistently regarding which foot Grimes used to kick Walters, and because he could not possibly have kept "sufficient balance to maintain the footing necessary to kick someone behind his back" while handcuffed.

At trial, however, Officers Walters and Wright testified that, even while handcuffed, Grimes was able to move his elbows and shoulders freely. In addition to Officer Walters's testimony that Grimes had hit him with his elbows, Officer Wright testified that he saw Grimes's elbow strike Officer Walters on at least one occasion as well. Finally, both officers also testified that after they had placed Grimes in a holding cell, he kicked backwards, striking Officer Walters in the upper stomach to lower chest area. Both officers demonstrated how Grimes was able to kick Walters while handcuffed, and Wright testified that Grimes had used his left foot.

When the district court denied Grimes's motion for acquittal at the close of evidence, the court noted that Officer Walters had demonstrated that Grimes had kicked him with his right foot. The judge further noted, however, that such an inconsistency was not appropriate for judgment of acquittal but rather was a matter for the jury to consider. Despite this discrepancy regarding which foot Grimes had used, the evidence taken as a whole was not so insufficient or contradictory that no reasonable factfinder could have convicted Grimes of the assault. *See United States v. Turcotte*, 405 F.3d 515, 528 n.5 (7th Cir. 2005) (noting that "weighing contradictory evidence and making credibility determinations are functions generally reserved for the jury"); *United States v. Bradley*, 165 F.3d 594, 595 (7th Cir. 1999) (explaining that minor inconsistencies in testimony do not render evidence insufficient to support a conviction).

Grimes next argues that the district court erred in imposing a two-level increase to his base offense level under U.S.S.G. § 2A2.4(b)(2) because, he says, Correctional Officer Walters did not suffer "bodily injury" as defined in the commentary to § 1B1.1. The determination that Grimes's conduct caused Walters bodily injury is a finding of fact that we review for clear error. *United States v. Mejia-Canales*, 467 F.3d 1280, 1282 (10th Cir. 2006). We will uphold the district court's factual determination unless, after considering all of the evidence, we are left with the firm conviction that a mistake has been made. *United States v. Wagner*, 467 F.3d 1085, 1089 (7th Cir. 2006). Where the district court chooses one of two permissible views of the evidence, the choice is not clearly erroneous. *Id.*

When a defendant is convicted of obstructing or impeding officers, the sentencing guidelines provide for a two-level increase to the base offense level "if the victim sustained bodily injury." U.S.S.G. § 2A2.4(b)(2). The guidelines define "bodily injury" as "any significant injury; *e.g.*, an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." *Id.* § 1B1.1, cmt. n.1(B); *accord id.* § 2A2.4, cmt. n.1.

During sentencing, the district court noted that, although it had difficulty seeing any redness or bruising on Officer Walters's chest in the government's picture of his injury, the examining physician reported redness and bruising on Walters's left upper chest. Thus, the district court applied the two-level bodily injury increase to Grimes's base offense level because it "was prudent that [Officer Walters] check that out, especially since it was in the chest." This decision is not clearly erroneous. *See, e.g., United States v. Ledford*, 218 F.3d 684, 690-91 (7th Cir. 2000) (upholding increase for inflicting "bodily injury" where one beating victim suffered contusion on chest that necessitated medical tests and other victim suffered bruising on side and arm); *United States v. Perkins*, 132 F.3d 1324, 1326 (10th Cir. 1997) (upholding increase where victim sought chiropractic care after suffering small laceration, bruising, and continued neck and shoulder pain); *United States v. Hamm*, 13 F.3d 1126, 1127-28 (7th Cir. 1994) (upholding increase where evidence showed that victim suffered bumps and bruises

and had wind knocked out of him); *United States v. Greene,* 964 F.2d 911, 911-12 (9th Cir.1992) (upholding increase where victim suffered pain for a week and sought medical treatment after being slapped); *Patrick v. Lewis,* 397 F. Supp.2d 1134, 1138 (D. Minn. 2005) (noting coroner's conclusion that death was caused by complications from blunt-force chest injury even though only outward sign of prisoner's injury was bruising); "Wilderness: Chest Injuries" *at* http://www.emedicinehealth.com/ wilderness_chest_injuries/page4_em.htm (noting that chest wall injury can result from blunt trauma to chest, and that anyone with chest injury should seek medical treatment).

Accordingly, we AFFIRM Grimes's conviction and sentence.